IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ALLERGY RESEARCH GROUP LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>REZ CANDLES INC., a Delaware corporation, and REZA DAVACHI, an individual,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:21-cv-73-TC-JCB |

Plaintiff Allergy Research Group (ARG) brings this trademark action against Defendants Rez Candles Inc. and Reza Davachi. It asserts six claims: trademark infringement under the Lanham Act; unfair competition under the Lanham Act; common law unfair competition; deceptive trade practices under a Utah statute; unfair competition under a Utah statute; and tortious inference with contractual relations.

Defendants ask the court to dismiss those claims because the court does not have personal jurisdiction over them. For the reasons set forth below, the court finds that it has jurisdiction to resolve ARG's claims against Rez Candles but not ARG's claims against Mr. Davachi.

**Factual Background[1]**

ARG, a company based in Salt Lake City, sells nutritional and dietary supplements on-line and through third-party retailers.  ARG has registered numerous trademarks connected to its brand and products.

Defendant Rez Candles is a Maryland-based company with a substantial nationwide business selling thousands of products through its third-party storefront on Amazon.com and its own website.  Rez Candles' online activity includes advertising and selling hundreds of ARG's products.  Despite its national online presence, "Rez Candles operates its business, responds to customer questions, stores inventory, and ships orders from Maryland."  (Decl. of Reza Davachi ¶ 8, ECF No. 15-1.)

Individual Defendant Reza Davachi, who lives and works in Maryland, is Rez Candles' owner and President.  ARG accuses Mr. Davachi, a former customer of ARG, of falsifying credentials with ARG's authorized distributors in order to conceal his identity.  That, ARG says, allowed him to avoid liability for violating those distributor's policies and precluded ARG's ability to enforce its distribution rules.

Even though Rez Candles is not an ARG-approved seller, it has sold many ARG products to Utah consumers.  According to ARG, Rez Candles purchases ARG products from authorized sellers, then repackages and resells the products to online consumers.  This practice avoids ARG's strict quality control procedures and results in sales of low-quality products bearing ARG's trademarks.  ARG alleges that Rez Candles may be using "risky fulfillment practices."

---

[1] The court takes the facts from Plaintiff's Complaint (ECF No. 2) and Reza Davachi's declaration (ECF No. 15-1).  See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995) (requiring court to take allegations in plaintiff's complaint as true to the extent defendant's sworn statements do not controvert them).

In addition to its claims against Rez Candles, ARG contends that Mr. Davachi is personally liable.  ARG alleges, on information and belief, that Mr. Davachi either sells the products himself, or, alternatively, "directs, controls, ratifies, participates in, or is the moving force behind the sales of infringing products[.]"  (Compl. ¶ 138, ECF No. 2.)   ARG also alleges, again on information and belief, that "Rez Candles Inc[.] follows so few corporate formalities and is so dominated by Davachi that it is merely an alter ego of Davachi."  (Id. ¶ 139.)  In response, Mr. Davachi says "[a]ll of [his] work to help run Rez Candles' operations, websites, advertisements, and sales is done as Owner and President of Rez Candles."  (Davachi Decl. ¶ 3.)

ARG alleges that "Defendants' ongoing sale of non-genuine products bearing the ARG Registered Trademarks harms the ARG brand."  (Compl. ¶ 141.)  According to ARG, it has suffered "significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damages to its intellectual property, and potential business relations."  (Id. ¶ 142.)  It further states that Defendants' actions have caused "irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity."  (Id. ¶ 143.)

After ARG discovered Rez Candles' sales, it sent three cease-and-desist letters during the period of July 2020 to January 2021.  In its letters, which identified ARG as a Utah company, ARG told Rez Candles and Mr. Davachi that ARG owned the trademark and that Defendants were interfering with ARG's contractual relationships with authorized sellers.  ARG also threatened legal action if Defendants did not stop selling ARG products.  Despite receiving those communications, Defendants continued to advertise and sell the infringing products to customers, including customers in Utah.  ARG then filed this suit.

**Defendants' Rule 12(b)(2) Motion to Dismiss**

Defendants ask the court to dismiss the case for lack of personal jurisdiction. "Personal jurisdiction can be acquired through either general jurisdiction or specific jurisdiction." Xmission, L.C. v. Fluent LLC, 955 F.3d 833, 840 (10th Cir. 2020). Defendants assert that the court has neither. ARG concedes the court does not have general jurisdiction but maintains the court has specific jurisdiction. "Specific jurisdiction … allows a court to exercise jurisdiction over an out-of-state defendant only for claims related to the defendant's contacts with the forum State." Id.

To determine whether this court has jurisdiction, the court must analyze whether exercising jurisdiction over the Defendants comports with due process.[2] Id. at 839. To do this, the court considers whether the defendants have minimum contacts with Utah "such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). That is, the defendant's contacts with the forum state "must be such that the defendant should reasonably anticipate being haled into court there.'" Xmission, 955 F.3d at 839–40 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

ARG has the burden to establish jurisdiction. Id. at 839. But because the court is not conducting an evidentiary hearing, ARG need only make a prima facie showing that personal

---

[2] "A federal court may not exercise personal jurisdiction over an out-of-state defendant unless (1) an applicable statute authorizes service of process on that defendant and (2) the exercise of statutory jurisdiction comports with constitutional due process." Xmission, 955 F.3d at 839. Utah's long-arm statute applies, but it "confers jurisdiction 'to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.'" Id. (quoting Fenn v. Mleads Enters. Inc., 137 P.3d 706, 710 n.10 (Utah 2006)). "The two-step analysis thus collapses here into a single due-process inquiry." Id.

4

jurisdiction exists. Id. ARG can establish jurisdiction through affidavits or other written materials, including the complaint (to the extent the defendant has not presented evidence contradicting those allegations). Id. The court must take uncontroverted well-pled allegations in the complaint as true. Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). If the plaintiff establishes the defendant has minimum contacts with the forum state, the defendant, to avoid litigating in the forum state, must present "'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Xmission, 955 F.3d at 840 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

**1. Minimum Contacts**

"Specific jurisdiction is proper if (1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'" Id. (quoting Burger King, 471 U.S. at 472).

a. Purposeful Direction

In order to conclude that Defendants purposefully directed their activities at Utah, the court must find a substantial connection between their activities and Utah. Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1160 (10th Cir. 2010. This ensures the court does not require an out-of-state defendant to account for "random, fortuitous, or attenuated contacts" with the forum state, "the unilateral activity of another party or third person," or "the mere foreseeability that its actions may cause injury in that jurisdiction." Xmission, 955 F.3d at 840–41 (internal quotation marks and citations omitted).

Case law allows a plaintiff to establish purposeful direction by showing "harmful effects in the forum State" or "exploitation of the forum-State market." Id. at 841. Under the "harmful effects" test, which is most relevant here, a plaintiff may establish purposeful direction by

5

showing that "an out of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state." Old Republic Ins. Co. v. Cont'l Motors, Inc., 877 F.3d 895, 907 (10th Cir. 2017).

The United States Supreme Court laid out the harmful effects test in Calder v. Jones, 465 U.S. 783 (1984). Calder requires a plaintiff to show that the defendant (1) intentionally committed an act (2) expressly aimed at the forum state (3) with the "knowledge that the brunt of the injury" would be felt in that state. Dudnikov, 514 F.3d at 1072. Under the circumstances here, ARG has established that Rez Candles purposefully directed its activities at Utah. ARG has not, however, done the same for Mr. Davachi.

      *i. Rez Candles*

Rez Candles has a substantial nationwide business selling thousands of products, including ARG products, on Amazon.com and its website. Both online sites are interactive, meaning the customer can exchange information with Rez Candles and complete purchases through the sites. Rez Candles advertises more than four hundred ARG products, which it regularly sells and ships to Utah-based consumers. According to ARG, those sales include the unauthorized use of ARG's trademark.

Rez Candles downplays those allegations, arguing that it has not targeted Utah. Reza Davachi states in his declaration that Rez Candles' sales to Utah have been "minimal" over the past few years.[3] (Davachi Decl. ¶ 10.) Rez Candles points out that all acts giving rise to ARG's complaint (for instance, operating the website and shipping products) occurred in Maryland. In addition, it emphasizes that its online presence, where it advertises and sells to consumers

---

[3] ARG alleges that sales to Utah have been "substantial." (Compl. ¶ 10.) The court must resolve that factual dispute in Defendants' favor (a sworn statement overrides a factual allegation).

throughout the United States, does not focus exclusively on Utah.

Those facts, including Rez Candles' strictly online presence, do not necessarily immunize it from a finding that it aimed its activities at Utah.

Violating a trademark right may satisfy the Calder effects test because the act of infringement targets the state where the trademark holder resides. According to the Tenth Circuit, some courts have found that Internet-based activities cause harmful effects when the cases involve trademark infringement claims. "[C]laims like defamation and trademark infringement … are generally considered intentional torts. In [Shrader v. Biddinger, 633 F.3d 1235 (10th Cir. 2011)], we cited with approval this kind of 'Calder-derived analysis for specific jurisdiction in the internet context.'" Old Republic, 877 F.3d at 908 (quoting Shrader, 633 F.3d at 1241).

As an example, the Old Republic decision cited to the Eleventh Circuit's decision in Licciardello v. Lovelady, in which the circuit court held that the trademark holder had established a prima facie case of specific jurisdiction. In that case, the court found that a defendant's alleged unauthorized use of a trademark targeted the forum state. Taking the plaintiff's allegations as true, the court said the defendant used the plaintiff's trademark "in order to misappropriate [plaintiff's] name and reputation for commercial gain. These allegations satisfy the Calder effects test for personal jurisdiction—the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum." 544 F.3d 1280, 1288 (11th Cir. 2008), cited with approval in Old Republic, 877 F.3d at 908 n.17.

Even more specifically, a number of courts have found personal jurisdiction over businesses accused of violating intellectual property rights through product sales on interactive websites, just as Rez Candles is alleged to have done. See, e.g., PopSockets LLC v. Y.E.F.

Trading Inc., No. 19-cv-03636-CMA-SKC, 2020 WL 6487418 (D. Colo. Nov. 4, 2020) (company with Amazon store front sold high volume of sub-standard products bearing plaintiff's trademark without plaintiff's permission); Otter Prods., LLC v. Phone Rehab, LLC, No. 19-cv-00206-RM-MEH, 2019 WL 4736462 (D. Colo. Sept. 27, 2019) (company, through its online marketplace on Amazon.com, made unauthorized sales of substandard products exhibiting plaintiff's trademark); Stomp, Inc. v. NeatO, LLC, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (online retailer accused of patent infringement advertised and offered plaintiff's products for sale on the Internet).

Additionally, Rez Candles continued to sell the products after ARG sent three cease-and-desist letters. ARG specifically told Defendants they were violating ARG's rights by selling the products without authorization. ARG also threatened to bring legal action against them. Yet Rez Candles continued to sell the products. Under the circumstances, Defendants should reasonably have anticipated that they would be "haled into court" in Utah.

Other courts have reached a similar conclusion. For example, a district court in the Northern District of Illinois found personal jurisdiction over a defendant who continued to violate plaintiff's trademark rights after receiving a cease-and-desist letter.

> [Defendant] Nikko corresponded with [Illinois-based Plaintiff] IPOX repeatedly, both before and after IPOX sent a cease-and-desist letter in October 2014. IPOX alleges that Nikko then reached into Illinois by infringing IPOX's trademark rights and attempting to capitalize on IPOX's reputation and goodwill with knowledge that IPOX had built its reputation and would be injured in Illinois. Nikko purposefully directed its conduct at Illinois, and could reasonably foresee being haled into court here. These contacts are sufficient to permit the Court to exercise personal jurisdiction over Nikko[.]

IPOX Schuster, LLC v. Nikko Asset Mgmt. Co., Ltd., 191 F. Supp. 3d 790, 800–01 (N.D. Ill. 2016). See also, e.g., Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1391 (8th Cir. 1991) (defendant could reasonably foresee being haled into the forum state after it continued

using plaintiff's trademark despite receiving cease-and-desist letter from plaintiff); Hilsinger Co. v. FBW Invs., 109 F. Supp. 3d 409, 426 (D. Mass. 2015) (finding personal jurisdiction in trademark infringement case in part because plaintiff's cease-and-desist letter provided notice to the out-of-state defendant that its continued use of the trademark would injure plaintiff in the forum state); Alpha Corp. v. Alfagres, S.A., 385 F. Supp. 2d 1230, 1236 (M.D. Ala. 2005) (defendant could reasonably foresee being haled into court after receiving cease-and-desist letter); DakColl, Inc. v. Grand Cent. Graphics, Inc., 352 F. Supp. 2d 990, 999 (D.N.D. 2005) (noting that plaintiff's cease-and-desist letter gave "ample warning" to the defendant, who nevertheless continued using copyrighted material).

As for the last prong of the analysis—knowledge that the brunt of harm would be felt in the forum state—"there is some overlap between [the "expressly aimed"] test and Calder's additional requirement … that a defendant must know that the harm was suffered in the forum state." Dudnikov, 514 F.3d at 1074–75 (internal quotation marks and citation omitted). Given that overlap, ARG easily satisfies this element. As noted above, ARG sent multiple cease-and-desist letters, telling Rez Candles that its sales, whether to Utah or other places, would directly harm ARG, a Utah-based company. Rez Candles continued to sell the products bearing ARG's trademark. And the sales substantially harmed ARG, as ARG alleged in its complaint. Those allegations support ARG's position that Rez Candles knew the brunt of the injury would be felt in Utah.

Given the above findings, ARG has satisfied the Calder test and has established that Rez Candles purposefully directed its activities at Utah.

       *ii.*    *Rez Davachi*

In contrast, ARG has not met its burden to show that Mr. Davachi purposefully directed his activities at Utah. None of the well-pled facts or other evidence shows that Mr. Davachi individually took any of the above-mentioned actions. Allegations about his involvement are sparse or conclusory.

To begin, ARG notes in its Complaint that "[u]ntil it conducts discovery, ARG cannot determine whether Davachi in his individual capacity, Rez Candles Inc[.], or both" operate the Amazon storefront and company website. (Compl. ¶ 137.) ARG's allegation that Mr. Davachi concealed his identity from authorized sellers does not lead to the conclusion that he was acting in anything other than his official capacity. In fact, ARG provides only a conclusory allegation that he acted on his own: "Upon information and belief, Davachi directs, controls, ratifies, participates in, or is the moving force behind the sales of infringing products[.]" (Id. ¶ 138.)

Alternatively, ARG offers an "alter ego" theory to support its position that Mr. Davachi is personally liable. But, again, ARG only offers a conclusory statement with no facts to support it: "[U]pon information and belief, Rez Candles Inc. follows so few corporate formalities and is so dominated by Davachi that it is merely an alter ego of Davachi," a conclusion that "is supported, in part, by the fact that Rez Candles Inc[.] appears to have no officers other than Davachi." (Id. ¶ 139.)

A plaintiff must allege jurisdictional facts that are "plausible, non-conclusory, and non-speculative." Dudnikov, 514 F.3d at 1070; see also Wenz, 55 F.3d at 1505 ("only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true" for purposes of determining personal jurisdiction). Without more specific

allegations from ARG, the court cannot find that Mr. Davachi expressly aimed his activities at Utah.

### b. Arises Out of or Relates to Defendant's Forum Activities

To establish specific jurisdiction, ARG must also show that its alleged injuries arose out of, or related to, the Defendants' activities. Xmission, 955 F.3d at 840. "The arising-out-of component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum." Id. (citing Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty., __ U.S. __, 137 S. Ct. 1773, 1781 (2017)). To that end, the court must ask whether there is "an affiliation between the forum and underlying controversy[.]" Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).[4]

As noted above, ARG's limited allegations against Mr. Davachi do not establish that he took harmful actions in anything other than his capacity as an officer of Rez Candles. In addition, without well-pleaded facts supporting its alter ego theory, ARG has not connected him, as an individual, to ARG's harm.

But ARG has sufficiently established this element for Rez Candles. Rez Candles purposefully directed its activities at Utah, including sales to Utah consumers and alleged unauthorized use of the ARG trademarks. ARG owns the trademarks associated with the products Rez Candles sells online, and those trademarks have great value to ARG. According to ARG, Rez Candles' sale of substandard products bearing ARG's trademarks has caused loss of consumer sales and good will, and has diminished the brand's value, in Utah and elsewhere. The

---

[4] Although the clause "arises out of" concerns causation, the "or related to" clause "contemplates that some relationships will support jurisdiction without a causal showing." Ford Motor Co. v. Montana Eighth Judicial Dist. Ct., ___U.S. ___, 141 S. Ct. 1017, 1026 (2021).

sales have also compromised ARG's relationship with its authorized sellers. These, and other more specific allegations, show ARG's claims arise out of Rez Candles' activities directed to Utah.

Considering all these allegations, the court finds ARG has established that Rez Candles has minimum contacts with Utah.

### 2. Traditional Notions of Fair Play and Substantial Justice

Because ARG has established a prima facie case of personal jurisdiction, the court must determine whether exercising personal jurisdiction over Rez Candles would "offend traditional notions of fair play and substantial justice." Xmission, 955 F.3d at 839. At this stage of the analysis, Rez Candles, to avoid litigating in Utah, must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985). To assess whether the court may require Rez Candles to litigate this matter in Utah, the court must consider:

> (1) the burden on the defendant, (2) the forum State's interesting in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1095 (10th Cir. 1998) (citing Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cty., 480 U.S. 102, 113 (1987)).

#### a. Burden on the Defendants

Rez Candles asserts it will be unduly burdened if the court requires it to litigate in Utah. It notes that it is based in Maryland, where it keeps its inventory and processes sales at issue in the case. It also complains that it "will incur substantial additional legal costs and travel costs, including appearing in this Court for trial." (Mot. to Dismiss at 12, ECF No. 15.) Although Rez Candles may incur additional legal and travel costs, it does not explain why those costs would be

unduly burdensome.  ARG suggests that "[t]he Court can manage this litigation to minimize in-person travel required for Defendants themselves." (Opp'n to Mot. Dismiss at 12, ECF No. 16.) The court agrees that case management along with today's modes of communication should noticeably reduce the burden.  Overall, the burden is not much greater than if the case were to be litigated in Maryland.

b.  <u>Utah's Interest in Resolving the Dispute</u>

Three of ARG's six claims—common law unfair competition, violation of Utah's Deceptive Trade Practices Act, and violation of Utah's unfair competition statute—allege violation of Utah law.  And of course ARG is a Utah company.  Not only does ARG allege that Defendants' violations of Utah law have harmed ARG, but it alleges that Defendants sold substandard products to Utah consumers who believed they were buying the same quality product associated with ARG's trademark.  Given that, Utah has an interest in resolving the issues arising out of its common law and statutes, protecting the interests of a Utah company, and protecting Utah consumers.

c.  <u>ARG's Interest in Receiving Convenient and Effective Relief</u>

ARG's witnesses and evidence relating to its trademarks, quality controls, and brand protection programs are located in Utah.  As a Utah-based company, ARG would certainly find litigating here more convenient.  Defendants do not argue otherwise.

d.  <u>The Interstate Judicial System's Interest in Efficient Resolution of the Dispute</u>

Here, the court asks "whether the forum state is the most efficient place to litigate the dispute." <u>OMI</u>, 149 F.3d at 1097.  Courts look at the "location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether

13

jurisdiction is necessary to prevent piecemeal litigation." OMI at 1097 (internal citations omitted).

The witnesses will no doubt come from both Utah and Maryland. Rez Candles' witnesses would most likely include Mr. Davachi, but Rez Candles does not say who its other witnesses might be. ARG specifically states that its witnesses are based in Utah. As for the question of where the wrong occurred, Defendants' actions took place in Maryland and through an online business unassociated with any geographic region, but that conduct injured Utah-based ARG. As for the choice of law, the parties do not dispute that Utah law applies. And the parties have not identified any problems with piecemeal litigation.

Given the overall circumstances, litigating this matter in Utah would be just as efficient, if not more, than litigating in Maryland.

   e. States' Interest in Furthering Social Policies

Certainly, Utah has an interest in protecting its policies, which are set forth in its statutes, including the two ARG relies on, and its common law tort cases. Defendants do not point to any specific interest Maryland has in the litigation. Nothing in the record suggests that trying the case in Utah and applying Utah law would negatively affect Maryland's policies and interests. Accordingly, this factor weighs in favor of ARG.

   f. Conclusion

Rez Candles has a high burden to establish that the court should not exercise jurisdiction. Given the above, Rez Candles has not presented a compelling case that being required to litigate in Utah would violate its due process rights.

## Conclusion

ARG has established a prima facie case that Rez Candles has sufficient minimum

contacts with Utah. And although Rez Candles has generally asserted it may be inconvenienced by litigating in Utah, it has not shown a compelling reason why the court should not exercise jurisdiction. "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 947 (11th Cir. 1997), quoted in Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1212 (10th Cir. 2000). "Certainly, in this age of instant communication and modern transportation, the burdens of litigating in a distant forum have lessened." Peay, 205 F.3d at 1213 (internal quotation marks and citations omitted). Requiring Rez Candles to litigate in Utah would not be "so gravely difficult and inconvenient" that Rez Candles would be at a "severe disadvantage." Burger King, 471 U.S. at 478. Accordingly, the court finds it has specific jurisdiction over Rez Candles.

But, as noted above, ARG has not met its burden to show that Mr. Davachi purposefully directed his activities to Utah. For that reason, the court does not have personal jurisdiction over him.

## ORDER

For the foregoing reasons, Defendants' Motion to Dismiss Under FRCP 12(b)(2) for Lack of Personal Jurisdiction (ECF No. 15) is GRANTED IN PART AND DENIED IN PART. The court has personal jurisdiction over Defendant Rez Candles, Inc., so the court denies the motion to dismiss Rez Candles. But ARG has not established that the court has personal jurisdiction over Defendant Reza Davachi, so the court dismisses Plaintiff's claims against Mr. Davachi without prejudice. If ARG, during discovery, obtains jurisdictional facts that would establish Mr. Davachi has minimum contacts with Utah, it may seek permission to file an

amended complaint adding him as a defendant.

DATED this 30th day of August, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge