Monica S. Call (#11361)
monica.call@stoel.com
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, UT 84111-4904
Telephone: (801) 328-3131
Facsimile: (801) 578-6999

Martha B. Motley (*pro hac vice*)
mbmotley@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-5626

Mark C. Zheng (*pro hac vice*)
mczheng@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
500 Grant Street, Suite 4900
Pittsburgh, PA 15219
Telephone: (412) 904-7722

*Attorneys for Plaintiff Allergy Research Group, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| ALLERGY RESEARCH GROUP, LLC, | **PLAINTIFF ALLERGY RESEARCH GROUP, LLC'S MOTION TO DISMISS COUNTERCLAIMS** |
| Plaintiff / Counterclaim-Defendant, | |
| v. | **Case No: 2:21-CV-00073-TC-JCB** |
| REZ CANDLES, INC., | |
| Defendant / Counterclaim-Plaintiff | |

## Table of Contents

I.   INTRODUCTION ........................................................................................................1

II.  BACKGROUND .........................................................................................................2

    A. Procedural History ...............................................................................................2

    B. Facts Relevant to ARG's Motion to Dismiss......................................................2

III. LAW AND ARGUMENT ...........................................................................................3

    A. Standard of Review...............................................................................................3

    B. Rez Candles Has Not Stated an Antitrust Claim. ................................................4

        1.  Rez Candles has not pled antitrust standing or injury...................................6

        2.  Rez Candles has not pled facts establishing any of the elements of its antitrust claims. ..........................................................................................................9

        3.  Rez Candles has not pled facts establishing a relevant market....................11

        4.  Rez Candles has not pled that ARG had market power.................................12

        5.  Rez Candles has not pled harm to competition.............................................14

    C. Rez Candles' Tortious Interference Claim Fails.................................................16

        1.  ARG's contracts are not improper. ..............................................................17

        2.  ARG's shutdown requests caused no interference.......................................18

        3.  ARG's litigation is protected by *Noerr-Pennington*...................................19

IV. CONCLUSION...........................................................................................................21

112688884.2 0073976-00001

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*2238 Victory Corp. v. Fjallraven USA Retail, LLC,*
  2021 U.S. Dist. LEXIS 3761, at *16 n.2 (S.D.N.Y. Jan. 8, 2021) ................................ 9, 10, 16

*Adidas Am., Inc. v. NCAA,*
  64 F. Supp. 2d 1097, 1102 (D. Kan. 1999) ................................................................. 11

*Anderson Dev. Co. v. Tobias,*
  116 P.3d 323, 332 (Utah 2005) .................................................................................... 20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................................. 3, 4

*Associated Gen. Contractors of Cal. v. Cal. State. Council of Carpenters,*
  459 U.S. 519 (1983) ....................................................................................................... 6

*Australian Gold, Inc. v. Hatfield,*
  436 F.3d 1228, 1235-36 (10th Cir. 2006) .................................................................... 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................................................... 4

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
  429 U.S. 477, 488 (1977) ............................................................................................... 7

*C.R. Eng. v. Swift Transp. Co.,*
  437 P.3d 343, 353 (Utah 2019) ............................................................................... 18, 19

*Coffey v. Healthtrust, Inc.,*
  955 F.2d 1388, 1392 (10th Cir. 1992) .......................................................................... 10

*Cont'l T.V. v. GTE Sylvania,*
  433 U.S. 36, 59 (1977) .................................................................................................. 10

*Dart Indus., Inc. v. Plunkett Co. of Oklahoma, Inc.,*
  704 F.2d 496, 499 (10th Cir. 1983) .............................................................................. 15

*Diaz v. Farley,*
  215 F.3d 1175, 1185 (10th Cir. 2000) .......................................................................... 10

*Eldridge v. Johndrow*,
  345 P.3d 553, 565 (Utah 2015) ................................................................17

*Elliott Indus. v. BP Am. Prod. Co.*,
  407 F.3d 1091, 1124-25 (10th Cir. 2005) ..............................................6, 7

*Florida Seed Co. v. Monsanto Co.*,
  105 F.3d 1372, 1374-75 (11th Cir. 1997) .................................................8

*Gatt Commc'ns, Inc. v. PMC Assocs., LLC*,
  711 F.3d 68, 77 (2d Cir. 2013) ................................................................9

*GHDI Mktg. LLC v. Antsel Mktg. LLC*,
  416 F. Supp. 3d 1189, 1202-03 (D. Colo. 2019) ......................................9

*Key Financial Planning Corp. v. ITT Life Ins. Corp.*,
  828 F.2d 635, 642 (10th Cir. 1987) ........................................................14

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
  551 U.S. 877, 888 (2007) ...................................................5, 9, 14, 15

*Med. Supply Chain, Inc. v. GE*,
  144 F. App'x 708, 714-15 (10th Cir. 2005) .............................................14

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*,
  508 U.S. 49, 60-61 (1993) ......................................................................20

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430, 436-37 (3d Cir. 1997) ......................................................11

*Rio Vista Oil, Ltd. v. Southland Corp.*,
  667 F. Supp. 757, 762 (Utah 1987) ...........................................................4

*SCFC ILC, Inc. v. Visa USA, Inc.*,
  36 F.3d 958, 965 (10th Cir. 1994) ......................................................7, 12

*Serpa Corp. v. McWane, Inc.*,
  199 F.3d 6, 10 (1st Cir. 1999) ..................................................................8

*Smith Machinery Co. v. Hesston Corp.*,
  878 F.2d 1290, 1296 (10th Cir. 1989) .................................................7, 14

*Thermolife Int'l v. Hi-Tech Pharms.*,
  2019 U.S. Dist. LEXIS 238183, at *34 (N.D. Ga. Nov. 1, 2019) .......12, 14

iii

*TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*,
  964 F.2d 1022, 1027-28 (10th Cir. 1992) ........................................................12, 13

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398, 408 (2004).................................................................................10

*Vesom v. Atchison Hosp. Ass'n*,
  279 F. App'x 624, 638 (10th Cir. 2008) ..........................................................7

*Wagner v. Circle W. Mastiffs*,
  732 F. Supp. 2d 792, 804 (S.D. Ohio 2010) ....................................................20

I.    **INTRODUCTION**

This Court should dismiss the Counterclaims because they fail to state any claims upon which relief can be granted.  At bottom, Rez Candles' counterclaims allege nothing more than that ARG has established an exclusive distribution system, allowing its products to be sold only by authorized sellers who follow ARG's quality control requirements.  Such exclusive distribution systems are commonplace, lawful, and enhance interbrand competition.

This Court should dismiss the antitrust counterclaims because Rez Candles has not alleged any facts showing that it has antitrust standing, and has not pled facts supporting either a *per se* or rule of reason claim.  Further, its proposed relevant product market is facially implausible, it pleads no facts showing that ARG has market power, and it fails to plead any harm to ***interbrand*** competition by ARG's conduct.  Each of these deficiencies is independently fatal to the antitrust claims.  Rez Candles' tortious interference counterclaim is similarly deficient because ARG was within its rights to enforce its own contracts, and send cease-and-desist letters to and litigate against Rez Candles.

1

## II.   <u>BACKGROUND</u>

### A.   Procedural History

On February 3, 2021, ARG brought this lawsuit against Rez Candles and its owner, Reza Davachi, for selling infringing products under the Rez Candles trademarks.  On April 8, Defendants moved to dismiss for lack of personal jurisdiction only, raising no challenge to the merits of ARG's claims.  *See* ECF 15.  On August 30, the Court granted in part Defendants' motion to dismiss with respect to Mr. Davachi individually, but denied their motion to dismiss with respect to Rez Candles.  *See* ECF 34.  On September 23, pursuant to a stipulated extension of time, Rez Candles filed its answer and counterclaims, asserting three counterclaims: a federal antitrust claim under § 1 of the Sherman Act; a Utah state antitrust claim; and a tortious interference claim.  ARG now moves to dismiss Rez Candles' counterclaims.  None of the allegations set forth in the Counterclaims— even if taken as true—are sufficient to state claims for antitrust violations or tortious interference.

### B.   Facts Relevant to ARG's Motion to Dismiss

ARG is a manufacturer of nutritional supplements that distributes its products exclusively through a distribution system to Authorized Sellers who must meet minimum quality control criteria and enter into agreements with ARG.  *See*

2

Counterclaims (ECF 37) ¶¶ 8-9.  To maintain its exclusive distribution system, ARG's contracts with its Authorized Sellers allow the Authorized Sellers to sell ARG products only to end users or other Authorized Sellers, but prohibit the Authorized Sellers from selling ARG products to unauthorized resellers like Rez Candles.  *See id.* ¶¶ 10, 15.

Rez Candles is not an Authorized Seller of ARG products.  *See, e.g.*, Counterclaims ¶¶ 8-10.  Rather, it claims to have established its own quality control procedures (rather than following ARG's procedures) and that it "makes clear that it is a reseller of the goods." *Id.* ¶ 11.  Because Rez Candles is not an Authorized Seller of ARG products, ARG does not sell products to Rez Candles and ARG's Authorized Sellers may not sell ARG products to Rez Candles under their contracts with ARG, a state of affairs Rez Candles characterizes as "depriving [Rez Candles] of access to first sale ARG products and preventing them from reselling ARG products." *Id.* ¶ 12.

## III.   LAW AND ARGUMENT

### A.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

3

550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Moreover, in evaluating a motion to dismiss, a court need not accept "legal conclusions" as true.  *Id.*  These pleading standards are particularly important in antitrust cases because the Supreme Court has advised that courts should not "forget that proceeding to antitrust discovery can be expensive."  *Twombly*, 550 U.S. at 555-58 (dismissing antitrust claims).

### B.    Rez Candles Has Not Stated an Antitrust Claim.

Rez Candles' first two causes of action purport to assert concerted refusal to deal and group boycott claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Utah state law.  Rez Candles' Utah state antitrust claims are subject to the same standard as its federal claims and this Court should also dismiss those claims for the same reasons.  *See* Utah Code Ann. § 76-10-3118 ("The Legislature intends that the courts, in construing this act, will be guided by interpretations given by the federal courts to comparable federal antitrust statutes . . . ."); *Rio Vista Oil, Ltd. v. Southland Corp.*, 667 F. Supp. 757, 762 (Utah 1987) ("generally Utah antitrust laws are to be construed in harmony with the federal antitrust scheme").

As an initial matter, Rez Candles pleads that ARG's "agreements constitute ***vertical*** restraints of trade."  Counterclaims ¶ 27 (emphasis added).  Vertical

4

restraints are rarely illegal, and they are certainly not illegal under the facts pled

here.  The Supreme Court has expressly "rejected the approach of reliance on rules

governing horizontal restraints when defining rules applicable to vertical ones,"

due to "the appreciated differences in economic effect between vertical and

horizontal agreements." *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S.

877, 888 (2007).  That is because vertical restraints—such as agreements between

manufacturers and distributors—have the potential to "stimulate interbrand

competition—the competition among manufacturers selling different brands of the

same type of product—by reducing intrabrand competition—the competition

among retailers selling the same brand," and "the primary purpose of the antitrust

laws is to protect [interbrand] competition." *Id.* at 890.  Indeed, in the case of

distribution agreements specifically, "manufacturers should be free to choose and

terminate their distributors free of antitrust scrutiny." *Westman Commc'ns Co. v.

Hobart Int'l, Inc.*, 796 F.2d 1216, 1229 (10th Cir. 1986); *see also Leegin*, 551 U.S.

at 903 ("A manufacturer can impose territorial restrictions on distributors and

allow only one distributor to sell its goods in a given region.").

Rez Candles' claims fly in the face of this precedent and fail for each of the

following independent reasons.  ***First***, Rez Candles has not pled antitrust injury, a

required element of antitrust standing.  That is because Rez Candles has alleged

that it was harmed only by losing the opportunity to become an ARG distributor, and not by consumers facing higher prices, or reduced quantity or quality.  **Second**, Rez Candles has not pled facts supporting its alleged product market, the sale of nutritional supplements.  Rez Candles has not provided any allegations regarding whether the products in that market are reasonably interchangeable with each other but not with other products.  **Third**, Rez Candles has not alleged that ARG had market power in the alleged product market, another required element of any antitrust claim based on a vertical restraint.  To the contrary, ARG is just one of hundreds of nutritional supplement brands and Rez Candles itself sells numerous other nutritional supplement brands.  **Finally**, Rez Candles has not pled any harm to interbrand competition.

### 1.    Rez Candles has not pled antitrust standing or injury.

This Court should dismiss Rez Candles' antitrust claims because its allegations do not show that it suffered any antitrust injury.  An antitrust "plaintiff must have suffered an antitrust injury and must have standing to bring an antitrust claim."  *Elliott Indus. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1124-25 & n.31 (10th Cir. 2005) (granting motion to dismiss antitrust claims because plaintiff "has not alleged an antitrust injury, its antitrust claims necessarily fail"; "antitrust injury is an element of antitrust standing"); *see Associated Gen. Contractors of Cal. v. Cal.*

6

*State. Council of Carpenters*, 459 U.S. 519, 535 (1983) (requiring antitrust

standing to survive a motion to dismiss).

"An antitrust injury is an injury of the type the antitrust laws were intended

to prevent and that flows from that which makes defendant's acts unlawful . . . the

antitrust injury requirement ensures that a plaintiff can recover only if the loss

stems from a competition-*reducing* aspect or effect of the defendant's behavior."

*Elliott Indus. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1124-25 (10th Cir. 2005)

(citations omitted).  That is because the "antitrust laws . . . were enacted for 'the

protection of *competition*, not *competitors*.'"  *Brunswick Corp. v. Pueblo Bowl-O-

Mat, Inc.*, 429 U.S. 477, 488 (1977).  "An antitrust injury must be analyzed from

the consumer's viewpoint."  *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624,

638 (10th Cir. 2008).  "Indeed, 'whenever producers invoke the antitrust laws and

consumers are silent, this inquiry becomes especially pressing.'"  *SCFC ILC, Inc.

v. Visa USA, Inc.*, 36 F.3d 958, 965 (10th Cir. 1994); *see also, e.g.*, *Smith

Machinery Co. v. Hesston Corp.*, 878 F.2d 1290, 1296-97 (10th Cir. 1989) ("To

the extent that a manufacturer's distribution practices enhance competition in the

consumer market, they should be encouraged despite their effect on suppliers and

distributors operating in an intermediate distribution market . . . the Sherman Act does not protect a dealer's right to maximize profits.").

Here, Rez Candles has not alleged an "antitrust injury" that could give it standing to bring its antitrust claims. The crux of Rez Candles' antitrust allegations is that it was not allowed to participate in ARG's exclusive distribution system. *See* Counterclaims ¶ 29 (alleging that ARG's exclusive distribution contracts "deprive Rez Candles of important means of acquiring ARG products," "the ability to re-sell genuine ARG products," and "the ability to build its reputation and brand"). Rez Candles alleges only in a conclusory fashion that ARG "artificially raised and maintained the price paid by consumers in the Relevant Market," but provides no detail, examples, or evidence supporting this bare allegation, and does not explain how this allegation caused Rez Candles' injury.

Moreover, Rez Candles, as a distributor, does not have antitrust standing to bring the claims it makes. Because distributors' interests are not the same as consumers', courts around the country have held that "distributors . . . presumptively lack antitrust standing." *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10 (1st Cir. 1999); *see also, e.g.*, *Florida Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374-75 (11th Cir. 1997) ("courts have consistently denied standing to

8

distributors who were terminated, or whose contracts were not renewed, following a merger"); *Gatt Commc'ns, Inc. v. PMC Assocs., LLC*, 711 F.3d 68, 77 (2d Cir. 2013) ("inhibitions on intrabrand competition actuated by dealership terminations lie far from the core § 1 violations that are likely to give rise to antitrust injury"); *2238 Victory Corp. v. Fjallraven USA Retail, LLC*, 2021 U.S. Dist. LEXIS 3761, at *16 n.2 (S.D.N.Y. Jan. 8, 2021) (dismissing antitrust claims by unauthorized seller challenging manufacturer's exclusive distribution contracts with authorized sellers because it only "details the economic loss specific to [the unauthorized seller], including lost profits, marketing expenses, storage costs and 'dead inventory'" but did not "plausibly allege antitrust injury" or "identify any effect on interbrand competition"); GHDI *Mktg. LLC v. Antsel Mktg. LLC*, 416 F. Supp. 3d 1189, 1202-03 (D. Colo. 2019) (dismissing antitrust claims where plaintiff alleged consumers suffered higher prices but it suffered lost revenues because "the injury to the plaintiff and the injury to competition must be one and the same").

### 2. Rez Candles has not pled facts establishing any of the elements of its antitrust claims.

Rez Candles has not pled facts supporting an antitrust claim either.  Initially, Rez Candles cannot proceed under a *per se* theory of antitrust liability because the *per se* rule does not apply to vertical agreements.  *See Leegin*, 551 U.S. at 907 ("Vertical price restraints are to be judged according to the rule of reason."); *Cont'l*

9

*T.V. v. GTE Sylvania*, 433 U.S. 36, 59 (1977) ("vertical restrictions . . . can be adequately policed under the rule of reason"); *Diaz v. Farley*, 215 F.3d 1175, 1185 (10th Cir. 2000) ("a horizontal, as opposed to a vertical, group boycott is a *necessary* condition for application of the *per se* rule"); *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1392 (10th Cir. 1992) ("to establish that a group boycott is *per se* illegal 'there must be an agreement among conspirators whose market positions are horizontal to each other'"); *see also Fjallraven*, 2021 U.S. Dist. LEXIS 3761, at *14 (dismissing *per se* claims because "[r]estrictions to intrabrand competition also have been held to be not inherently anti-competitive, and are therefore scrutinized under the rule of reason").  Indeed, the Tenth Circuit has held specifically in the context of exclusive distribution agreements that "section one of the Sherman Act does not proscribe refusals to deal absent a showing of monopoly or market power on the part of the manufacturer."  *Westman*, 796 F.2d at 1229; *see also Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (dismissing refusal to deal lawsuit because "compelling negotiation between competitors may facilitate the supreme evil of antitrust: collusion").

Here, Rez Candles acknowledges that the exclusive distribution agreements between ARG and its authorized sellers are "***vertical*** restraints of trade," not

horizontal ones.  Counterclaims ¶ 27 (emphasis added).  Accordingly, as set forth above, ARG's agreements are not *per se* unlawful.

Nor does Rez Candles' claim fare any better under the rule of reason.  Rez Candles has not stated a rule of reason claim for at least three reasons: (i) it has not pled a plausible relevant market; (ii) it has not pled that ARG had market power in its alleged market; and (iii) it has not pled harm to interbrand competition.

### 3.  Rez Candles has not pled facts establishing a relevant market.

Rez Candles' rule of reason claim fails first because it has not defined an adequate relevant market:

> Where [an antitrust] plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual interferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

*Adidas Am., Inc. v. NCAA*, 64 F. Supp. 2d 1097, 1102 (D. Kan. 1999) (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997)).

In this case, Rez Candles' alleged market is "the sale (both first sale and resale) of non-prescription nutritional and dietary supplements within the United States."  Counterclaims ¶ 6.  However, Rez Candles does not identify what specific

11

products are in this market, offers no analysis of this market, and does not explain why this market includes all reasonably interchangeable substitute products, as required. Rez Candles' conclusory market definition is insufficient to state a claim. *See Thermolife Int'l v. Hi-Tech Pharms.*, 2019 U.S. Dist. LEXIS 238183, at *34 (N.D. Ga. Nov. 1, 2019) (dismissing antitrust claims based on relevant market definition of the "dietary supplement market in the United States" because that "conclusory allegation does not sufficiently define 'a distinct market, with a specific set of geographical boundaries and a narrow delineation of the products at issue'").

### 4. Rez Candles has not pled that ARG had market power.

Rez Candles also does not allege that ARG had market power in the relevant market, an omission fatal to its claims. "A manufacturer's ability to limit its distributorships may not be restricted . . . unless the manufacturer possesses 'market power' with respect to the product whose distributorship arrangements are being questioned." *Westman*, 796 F.2d at 1225; *see SCFC*, 36 F.3d at 965 ("Rule of reason analysis first asks whether the offending competitor . . . possesses market power in the relevant market where the alleged anticompetitive activity occurs."); *TV Commc'ns Network, Inc. v. TNT, Inc.*, 964 F.2d 1022, 1027-28 (10th Cir. 1992) ("Section one only prohibits refusal to deal where a manufacturer has monopoly

12

power in the market.").  "Ascertaining whether a manufacturer has market power requires the court to employ a market analysis," including explaining whether there are other, reasonably interchangeable products in the market and whether consumer preferences shift between these products.  *Westman*, 796 F.2d at 1226.

Rez Candles does not plead (let alone plead any facts to support) what market share ARG had in this market, what competitors ARG had in this market, or what if any market power ARG had in this market.  Indeed, Rez Candles does not plead that ARG had ***any*** market share in its relevant market, which is the market for sale and resale of nutritional supplements, not the development or manufacturing of them.  *See, e.g.*, *TNT*, 964 F.2d at 1027-28 (dismissing refusal to deal claim under FRCP 12(b)(6) against TV channel because TV channel "does not have any market share of the subscription television market").  Rez Candles also does not plead why ARG products are not reasonably interchangeable with the many other supplement brands that Rez Candles can and does resell.[1]  Indeed, any allegation that ARG has market power in a market that includes hundreds of other supplement brands, is implausible on its face.  Rez Candles' failure to plead market

---

[1] Rez Candles' website https://theoasisofhealth.com/ itself advertises nine non-ARG brands of supplements on its front page, and Rez Candles' Amazon storefront at https://www.amazon.com/s?i=merchant-items&me=A35CSG8GBUTFQU sells at least eleven non-ARG supplement brands.

112688884.2 0073976-00001

power is fatal to its claims.  *See Med. Supply Chain, Inc. v. GE*, 144 F. App'x 708, 714-15 (10th Cir. 2005) (dismissing antitrust claims against General Electric for blocking a competitor from receiving financing because "GE does not have market power in the financial market"); *Thermolife*, 2019 U.S. Dist. LEXIS 238183, at *34 (dismissing antitrust claims where the complaint "contains only the claim the ThermoLife monopolized or attempted to monopolize 'the market for nutritional supplements' with no factual support").

### 5.    Rez Candles has not pled harm to competition.

Finally, Rez Candles has not stated a rule of reason claim because it has not pled harm to competition.  "In order to satisfy the rule of reason, the plaintiff must prove that the termination had an adverse effect on competition." *Key Fin. Planning Corp. v. ITT Life Ins. Corp.*, 828 F.2d 635, 642 (10th Cir. 1987). Specifically, Rez Candles must show a harm to *interbrand* competition.  The "antitrust laws are designed primarily to protect interbrand competition." *Leegin*, 551 U.S. at 895; *see Smith Machinery Co. v. Hesston Corp.*, 878 F.2d 1290, 1295 (10th Cir. 1989) ("antitrust law primarily is concerned with interbrand and not

14

intrabrand competition"). In fact, the law often favors limits on intrabrand competition because they enhance interbrand competition:

> There are several reasons why it is procompetitive to permit a manufacturer to limit the number of outlets that distribute its products. A few are readily apparent. First, when a manufacturer limits the number of its distributors, it may reduce its distribution costs by allowing each distributor to achieve economies of scale and to spread out fixed costs over a large amount of products. Second, refusals to deal may facilitate the entry of new manufacturers into the market. The prospect of limited intrabrand competition that results from restricted distribution may encourage distributors to make the investment necessary to carry a new manufacturer's product. Third, limiting the number of outlets that distribute a product may encourage distributors to provide promotional activities, consumer information, and product service. These activities may in turn lead to increased interbrand competition. When a manufacturer limits the number of retail outlets for its products, it ensures that competing sellers of its product will not get a "free ride," or benefit from the promotions or service provided by other distributors. Finally, restricting distribution can reduce transactions costs by permitting a manufacturer to deal only with distributors with whom it believes it can develop an efficient working relationship.

*Westman*, 796 F.2d at 1227 (internal citations omitted). Thus, "even though those refusals to deal may limit intrabrand competition, they are likely to benefit consumers by increasing interbrand rivalry." *Id.* at 1227; *see also Leegin*, 551 U.S. at 890-92 (discussing competitive benefits of vertical restrictions); *Dart Indus., Inc. v. Plunkett Co. of Okla., Inc.*, 704 F.2d 496, 499 (10th Cir. 1983) (manufacturer did not violate antitrust laws by having an exclusive distribution system and banning its distributors from selling to plaintiff because to "hold

15

otherwise would require a manufacturer to permit a gap in its product distribution system and would not serve the procompetitive aims of the antitrust laws").

Here, Rez Candles pleads no facts to support harm to interbrand competition, only conclusory allegations. Rez Candles baldly asserts that ARG "limited the supply and variety of products available, inhibited the growth and development of competitors, and artificially raised and maintained the price paid by consumers in the Relevant Market," but provides no factual allegations to support this conclusory statement. Counterclaims ¶¶ 30, 38. Indeed, one would expect that ARG limiting its distribution would "facilitate the entry of new manufacturers into the market" because those manufacturers would have more opportunity to sell to distributors that have not been authorized by ARG. *Westman*, 796 F.2d at 1227. Accordingly, this Court should dismiss Rez Candles' claim. *See Fjallraven*, 2021 U.S. Dist. LEXIS 3761 at *16 n.2 (unauthorized seller's "claim invoking the rule of reason likely would have been dismissed, had it not been abandoned" because it "does not describe any broader effect on the market in backpack sales").

### C. Rez Candles' Tortious Interference Claim Fails

Finally, Rez Candles' third cause of action for tortious interference with economic relations fails. Tortious interference under Utah law has three elements:

16

(1) "the defendant intentionally interfered with the plaintiff's existing or potential economic relations"; (2) "by improper means"; and (3) "causing injury to the plaintiff." *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015).

In this case, Rez Candles alleges that ARG interfered with its contracts in three ways: (1) "improper contractual provisions"; (2) "abusive shutdown requests to Rez Candles website and Amazon store front"; and (3) "harassing litigation." Counterclaims ¶ 44.  All of these bases fail—the first because it does not constitute "improper means," and the second and third because they do not satisfy any of the three elements for tortious interference.

### 1.    ARG's contracts are not improper.

Rez Candles first alleges that ARG and its Authorized Sellers' "contracts require ARG's Authorized Sellers to sell ARG products to end-user consumers through approved channels or resellers who meet certain requirements as dictated by ARG."  Counterclaims ¶ 45.  However, these contracts are not improper and therefore cannot be the basis for Rez Candles' tortious interference claim.

Tortious interference under Utah law requires a showing of wrongful means, and Utah courts have "defined improper means narrowly to include only those actions that 'are contrary to law, such as violations of statutes, regulations, or recognized common-law rules,' or actions that violate 'an established standard of a

trade or profession.'" *C.R. Eng. v. Swift Transp. Co.*, 437 P.3d 343, 353 (Utah 2019). A "person is not liable for intentional interference where the person engaged only in conduct in which he or she was legally entitled to engage." *Id.* at 354.

In this case, Rez Candles has not cited any established standards or laws that ARG's exclusive distribution agreements violate, other than the antitrust statutes that ARG has addressed above. To the contrary, the law "allow[s] suppliers wide latitude in selecting their distributors." *Westman*, 796 F.2d at 1226. Accordingly, ARG's exclusive distribution agreements cannot constitute tortious interference. If anything, courts have held unauthorized sellers liable for tortious interference with exclusive distribution agreements, rejecting the argument that those exclusive distribution agreements are wrongful. *See Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1235-36 (10th Cir. 2006) (Oklahoma law).

## 2. ARG's shutdown requests caused no interference.

Rez Candles cannot state a tortious interference claim based on "shutdown requests to Rez Candles website and Amazon store front." Counterclaims ¶ 44. Initially, Rez Candles does not provide any details about what these "shutdown requests" were, and such requests appear to refer to the cease-and-desist letters that

18

ARG sent to Rez Candles (and Rez Candles ignored).  *See* Compl. ¶ 109-16 (ECF 2).

As with the exclusive distribution contracts, ARG's requests cannot support a tortious interference claim because Rez Candles has not pled that they were a wrongful means.  Rez Candles has not identified any laws or standards that ARG's requests violated.  *See C.R. Eng.*, 437 P.3d at 353.

Moreover, communications that ARG sent privately to Rez Candles cannot support a tortious interference claim because they could not have interfered with the economic relationships between Rez Candles and any third parties.  Indeed, Rez Candles has not identified any third parties who terminated their economic relationships with Rez Candles as a result of shutdown requests that ARG sent to Rez Candles.  Rez Candles does not even allege that it has in fact shut down its website or Amazon storefront in response to ARG's requests.[2]

### 3.    ARG's litigation is protected by *Noerr-Pennington*.

Finally, Rez Candles' tortious interference claim premised on "harassing litigation" is barred by the *Noerr-Pennington* Doctrine.  Under that doctrine,

---

[2] To the contrary, Rez Candles' website is still online at https://theoasisofhealth.com/ (last visited October 13, 2021), and its Amazon storefront currently lists more than 10,000 different items for sale: https://www.amazon.com/s?i=merchant-items&me=A35CSG8GBUTFQU (last visited October 13, 2021).

"individuals and organizations are immune from liability under antitrust laws for actions constituting petitions to the government." *Anderson Dev. Co. v. Tobias*, 116 P.3d 323, 332 (Utah 2005). The *Noerr-Pennington* Doctrine has been extended to protect "against tort claims as well as antitrust claims." *Id.* The *Noerr-Pennington* Doctrine applies to litigation unless the litigation is a sham, *i.e.* both "objectively baseless" and subjectively motivated by the desire to use "the government *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60-61 (1993) (citations omitted).

In this case, Rez Candles has not pled that ARG's litigation against it is objectively baseless. To the contrary, Rez Candles made the decision to ***not*** move to dismiss the merits of ARG's claims (even as it moved to dismiss for lack of personal jurisdiction), suggesting that it does not find ARG's claims to be objectively baseless. *See Wagner v. Circle W. Mastiffs*, 732 F. Supp. 2d 792, 804 (S.D. Ohio 2010) (court's denial of motion to dismiss was "insurmountable bar to" overcoming *Noerr-Pennington* doctrine). Moreover, Rez Candles has not alleged that ARG had any motive to use the process of this lawsuit rather than the outcome against Rez Candles. To the contrary, ARG's motivation is to obtain a judgment requiring Rez Candles to stop selling infringing ARG-trademarked products, which

20

would be the outcome of this lawsuit and not its process.  As Rez Candles' own Counterclaims acknowledge, ARG attempted to achieve that outcome first through creating an exclusive distribution system through contract and then through cease-and-desist letters, using litigation only as a last resort.

Furthermore, like with the shutdown requests, ARG has brought this litigation solely against Rez Candles, and Rez Candles has not identified any economic relationships with third parties that this litigation has interfered with.

## IV.    CONCLUSION

For these reasons, ARG respectfully requests that the Court dismiss Rez Candles' Counterclaims.

Dated: October 14, 2021

By: */s/ Monica S. Call*_____
Monica S. Call
STOEL RIVES LLP
monica.call@stoel.com
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, UT 84111-4904
Telephone: (801) 328-3131

Martha B. Motley (*pro hac vice*)
mbmotley@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-5626

Mark C. Zheng (*pro hac vice*)
mczheng@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
500 Grant Street, Suite 4900
Pittsburgh, PA 15219
Telephone: (412) 904-7722

*Attorneys for Plaintiff / Counterclaim-Defendant Allergy Research Group, LLC*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2021, a copy of the foregoing was

served via CM/ECF on the following attorneys for Defendant / Counterclaim-

Plaintiff Rez Candles, Inc. as follows:

William O. Kimball
William B. Chadwick

*Attorneys for Defendant / Counterclaim-Plaintiff*


/s/ Monica S. Call
Monica S. Call

23